## CIRCUIT COURT OF THE CITY OF RICHMOND

Philip Morris, Inc.

v.

Virginia Employment Commission

November 2, 1987

Case No. N 4724-2

By JUDGE ROBERT L. HARRIS, SR.

At issue here is whether or not Philip Morris, Incorporated, must pay an unemployment tax on the wages of off-duty policemen it hires to patrol the immediate neighborhoods of some of its property.

Philip Morris asked for a determination by the Virginia Employment Commission as to whether such off-duty policemen are employees under the Virginia Unemployment Compensation Act, formerly §§ 60.1-1 through 60.1-134, Code of Virginia (now §§ 60.2-100 through 60.2-635). After conducting a hearing before a Special Examiner, the commission concluded that the off-duty policemen were employees of Philip Morris within the meaning of § 60.1-14 of the act, and therefore ordered Philip Morris to file the appropriate reports on wages paid to such workers, beginning with calendar year 1983.

Philip Morris petitioned this court for judicial review of the commission's order and opinion, and filed a brief in support of its petition. The court heard oral arguments from the parties, and received post-hearing briefs by the commission and Philip Morris. In addition, the record before the court includes the records of the proceedings by the commission. The City of Richmond decided not to file an *amicus curiae* brief.

The court accepts the findings of fact made by the commission, as do the parties:

The Petitioner owns and operates a number of manufacturing facilities in the Richmond area, some of which are located in what are considered to be "high crime" neighborhoods. The Petitioner employs its own security force, who are conceded to be employees, and also contracts with the Advance Security Agency to supply security personnel on a contract basis, these individuals remaining employees of that agency. Additionally, however, the Petitioner has requested and obtained approval from the City of Richmond Bureau of Police to obtain the services of off-duty City police officers to provide even more security at some of its facilities.

The Richmond Bureau of Police has established its own procedures for providing the services of off-duty officers in such situations. Officers are prohibited from working excessive number of hours which might interfere with their regularly scheduled police duties. They are to be compensated at a standard hourly rate ($13.00 per hour for uniform police officers and $16.00 for supervisors as of September 1, 1984) with time and a half pay for any work performed on legal city holidays. Officers performing such work are subject to all Bureau Rules and Regulations, Policies and Procedures, Executive Orders, and the City Personnel Rules. Violations can subject the officer to disciplinary action as if they occurred on a regular tour of duty for the City. The unexcused failure of an officer to report for off-duty work after officially applying for it can result in being restricted from all such work for a period of 90 days.

The Petitioner has engaged the services of one off-duty police officer whose function is solely to work out a schedule by which other officers patrol the perimeter of the Petitioner's facilities. The officers performing such functions wear their City police uniforms and carry their

City issued equipment, including sidearms. They also pick up a radio owned by the Petitioner, which gives them contact with the Petitioner's security office.

The Petitioner exercises no control over the manner in which the officers patrol their beat. They are at all times free to arrest persons involved in crimes, which may be committed outside of the Petitioner's facilities and, in fact, there have been at least two homicide investigations initiated as the result of discoveries made by an off-duty police officer outside of the Petitioner's facilities.

The Petitioner does not undertake to prescribe the manner in which the off-duty police officers must patrol the area around the facilities. The individual officers sign a sheet indicating the number of hours they have worked and they are paid directly by the Petitioner for those hours in accordance with the fee schedule established by the Bureau of Police. No deductions are made for federal or state income tax withholding or for FICA. At the end of each year, those officers performing services for the Petitioner receive an IRS form 1099 in which all compensation payable during that year is listed.

The act defines "employment" as any service performed for remuneration or under any contract of hire, written or oral. § 60.1-14(1)(a), now § 60.2-212(A)(1). Exclusions are provided for employment falling under the following categories (§ 60.1-14(C), now § 60.1-212(C)).

C. Services performed by an individual for remuneration shall be deemed to be employment subject to this title unless:
1. Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and
2. Such service is either outside the usual course of the business for which such

service is performed, or such service is performed outside of all the places of business of the enterprise for which such service is performed; or such individual, in the performance of such service, is engaged in an independently established trade, occupation, profession, or business.

The commission found that the police officers were free from control or direction by Philip Morris, but that the terms of their employment did not satisfy any one of the three conditions required by the second part of the test. That is, the services were in fact not:

1. Outside the usual course of Philip Morris's business,

2. Performed outside of all the places of Philip Morris's business,

3. Performed by individuals in an independently established trade, occupation, profession, or business.

The standard of this court's review is that the commission's findings of fact, given support from the evidence and absent fraud, are conclusive, and only questions of law are within this court's jurisdiction. *See,* former Code § 60.1-71. Moreover, "[a]s defined in the Act, the term 'employment' should be accorded a broader and more inclusive meaning than in the common-law context of master and servant." *Virginia Employment Commission v. A.I.M. Corp.,* 225 Va. 338, 346 (1983).

Neither party claims fraud before the commission. Philip Morris does claim that its employment of off-duty policemen meets all three of the criteria in the second part of the test for exclusion, and that the evidence supports such a conclusion. The court finds that Philip Morris fails to carry its burden here. Of course, Philip Morris need show only one of the three exceptions applies, but it fails to do so.

1. Are the services outside Philip Morris's usual course of business? The court accepts the commission's finding that Philip Morris supplemented in-house and contract security functions with off-duty policemen. This supports the analysis by the commission that "provision of security is an essential element of a production process whether that security is provided inside the plant or outside the facility."

2. Are the services performed outside of all the places of business?

The court accepts the special examiner's conclusion that Philip Morris failed to sustain its burden of showing that the services provided by the off-duty policemen were performed outside all of the corporate places of business. Most of the patrolling is performed on the city streets around the Philip Morris property. There is testimony by Philip Morris that the police officers also patrolled the company's premises.

3. Are the off-duty policemen, in their work for Philip Morris, engaged in an independently established trade, occupation, profession, or business?

The commission analyzed this issue by looking at the manner in which a policeman could qualify for hire by Philip Morris. It found that they must be employees of good standing with the city. They are subject to all rules and regulations of their regular jobs. They have no authority to negotiate their compensation from Philip Morris, because that rate of pay is set by the city. The commission concluded, based on that evidence, that "the officers are not engaged in an independently established trade, profession or business."

Philip Morris takes exception to the commission on this point, claiming that it is based "solely on the fact that the police officers remain public servants subject to the rules and regulations of the Bureau [of Police]." On that point the court believes that Philip Morris misunderstood the commission's finding, which is based on the nature of the contract between the Bureau and the policemen, not on the contract between the company and the policemen. Here the putative employer cannot consider the policemen as independent contractors only because they are in fact kept from that status by the nature of their contract with the city, and the agreement between the Bureau and the company. The policemen have no power to conduct the security business at issue here on their own. The two contracts here, one expressed between the policemen and the city, and one between the city and Philip Morris are complete, and provide an unbroken contractual chain between the policemen and Philip Morris. The remedy for breach available to Philip Morris is that

it may bar continued assignment of a policeman to its patrols.

Both parties have provided the court with reasoned explanations of the meaning of the statutory term "independently established." A recent opinion of the Court of Appeals restates the law in Virginia,

> The Supreme Court of Virginia, in *Life and Casualty Insurance Co. v. Unemployment Compensation Commission*, 178 Va. 46, 16 S.E.2d 357 (1941), quoted with approval the following statement by the predecessor of the Commission:
> And again in speaking of being "engaged in an independently established trade. . . or business" the commission said:
> "We think that it is elemental that one engaged in an independent enterprise, business, or profession has a proprietary interest therein to the extent that he can operate it without hindrance from any individual or force whatsoever. These agents have no business to which they have a right to continuity. They have nothing they can sell or give away. . . . The contract may be terminated by the company at any time without liability on its part for damages for breach of contract--a fact which negatives the existence of an independent relationship."

*Virginia Employment Commission v. Peninsula Emergency Physicians, Inc.*, 4 Va. App. 621, 359 S.E.2d 552, 556 (1987).

Philip Morris is not dealing with independent, established security guards when it hires off-duty policemen. The court affirms the commission's determination that the off-duty policemen, in their work for Philip Morris, are not engaged in an independently established trade, occupation, profession, or business.

Accordingly, I am of this date entering the enclosed order, which reflects this decision.

## ORDER

This matter came before the Court upon the petition of Philip Morris, Inc., pursuant to the jurisdictional provisions of Va. Code § 60.2-500, formerly § 60.1-71.

Philip Morris, Inc., seeks a determination by this Court that services performed by off-duty police officers in the vicinity of certain of its facilities do not constitute "employment" within the meaning of Va. Code Section 60.2-212(C), formerly § 60.1-14(6). After review of the record below and briefing and oral argument by the parties, this Court finds that on the facts of this case, the services at issue are "employment" within the meaning of Va. Code § 60.2-212(C).

It is therefore ordered that decision No. L-154 of the Special Examiner of the Virginia Employment Commission be and hereby is affirmed.